UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

United States of America

          v.

Marcellus Overton,

          Defendant.

**Decision and Order**
15-CR-9S

---

I.    INTRODUCTION AND BACKGROUND

      The Government commenced this case against defendant Marcellus Overton ("Overton") by filing a two-count indictment on January 13, 2015. (Dkt. No. 1.) In Count One, the Government accuses Overton of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2). In Count Two, the Government accuses Overton of interstate transportation of a minor for purposes of criminal sexual activity, in violation of 18 U.S.C. § 2423(a).

      Overton filed pretrial motions on August 8, 2016 (Dkt. No. 63) and September 23, 2016 (Dkt. No. 65). In short, Overton seeks various pretrial disclosures under Rule 16 of the Federal Rules of Criminal Procedure ("FRCP") and under 18 U.S.C. § 3500 and associated cases. The Government opposes Overton's motions beyond discovery that it has provided already and will provide upon issuance of a trial order from District Judge William M. Skretny.

      Judge Skretny has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. Entry Jan. 15, 2015.) The Court held oral argument on February 13, 2017. (Dkt. No. 76.) Since Overton does not seek dispositive relief or any other relief that would require factual or credibility

assessments, the Court adjudicates his motions as explained below by way of a Decision and Order without the need for any hearings.

II. DISCUSSION

   A. *Statements from Overton*

Generally, FRCP 16 requires the Government, upon a defendant's request, to furnish oral, written, or recorded statements that the defendant made during an interrogation by a known government agent. FRCP 16 (a)(1)(A–B). The rule "gives a defendant virtually an absolute right to his own statements in the absence of highly unusual circumstances of a sort that would otherwise justify a protective order." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (internal quotation marks and citations omitted). Here, the Government has respected Overton's rights by searching its file and disclosing a statement that he made to local law enforcement on January 18, 2013. The Government asserts that it has no other written or recorded statements from Overton, and Overton has given the Court no reason to doubt the assertion. The Court accordingly denies this portion of Overton's motions as moot but without prejudice to renew if additional information emerges.

   B. *Prior Criminal Record and Bad Acts*

Overton has two requests in this category. First, Overton seeks disclosure of his criminal record under FRCP 16(a)(1)(D). Disclosure of a criminal record covers the fact of a prior conviction in itself, not facts underlying that conviction. *See United States v. Hourihan*, 66 F.3d 458, 463 (2d Cir. 1995) (citation omitted). The Government has produced records of Overton's

2

prior criminal history and cites to the pretrial services report that Overton received early in the case from the United States Probation Office. The Government's disclosures are sufficient.

Overton seeks further to receive information about prior bad acts that the Government intends to introduce at trial. This request falls under Rule 404(b) of the Federal Rules of Evidence ("FRE"). FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." "The purpose of the notice provision is to reduce surprise and promote early resolution of any challenge to admissibility of the proffered evidence. While notice is typically provided no more than two to three weeks before trial, a longer period is appropriate where there is an absence of any threat to the safety of prospective witnesses and the Rule 404(b) evidence is important to the action. Reasonable notice of Rule 404(b) evidence does not, however, require the Government to provide unduly early notice." *United States v. Solnin*, 81 F. Supp. 3d 193, 210 (E.D.N.Y. 2015) (internal quotation and editorial marks and citations omitted). "Courts have found 'reasonable notice' to be anywhere from over four months to two weeks." *United States v. James*, No. 02 CR 0778 (SJ), 2007 WL 914242, at *23 (E.D.N.Y. Mar. 21, 2007) (citations omitted).

To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government will produce all FRE 404(b) evidence as directed by Judge Skretny in the eventual trial order. Overton has not demonstrated circumstances here that would warrant a more immediate determination, especially considering that a trial date has not been set

3

yet. The Government nonetheless should remain mindful of what "reasonable notice" might mean for this case.

The Court accordingly denies this portion of Overton's motions without prejudice, deferring to Judge Skretny as to how much FRE 404(b) notice Overton should receive.

### C. Documents and Objects

Overton seeks documents and objects under FRCP 16(a)(1)(E). Items that fall under this rule satisfy three criteria: "the item is material to preparing the defense; the government intends to use the item in its case-in-chief at trial; or the item was obtained from or belongs to the defendant." *Id.* The rule does not cover rebuttal evidence or evidence that would influence what testimony a defendant would offer. *See United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) ("We know of no legal principle that requires the prosecution to disclose its proposed rebuttal evidence to the defendant, to help him decide whether to pursue a particular contention."); *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) ("Nor is [evidence not used in the Government's case in chief] to be deemed material merely because it would have dissuaded the defendant from proffering easily impeached testimony."). Here, the Government has provided Overton with a copy of the contents of a cellular telephone that agents seized from him upon his arrest. A general notice that some or all of those contents might be used at trial will be sufficient without further specification, considering that Overton generated the contents and that the volume of the collection "does not seem to have exceeded the capacity of an attorney to read and study in preparation for a major trial." *United States v. Marino*, 639 F.2d 882, 889 (2d Cir. 1981).

The Court accordingly denies Overton's motion without prejudice to renew if additional documents or objects do become an issue closer to trial.

### D.  Brady / Jencks / Giglio Information

Overton seeks information subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and *Giglio v. U.S.*, 405 U.S. 150 (1972).  "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution . . . . Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."  *Brady*, 373 U.S. at 87.  The *Brady* rule covers situations "[w]hen the reliability of a given witness may well be determinative of guilt or innocence."  *Giglio*, 405 U.S. at 154 (internal quotation marks and citation omitted); *accord U.S. v. Bagley*, 473 U.S. 667, 676 (1985) (plurality opinion) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule.") (citing *Giglio*).  When considering information that might fall under the *Brady* rule, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  The Government does not necessarily have to await a defense request to produce information that falls under the *Brady* rule, but neither does it need to adopt an "open file policy."  *See id.* at 437; *see also U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is

5

made by the defense. The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.") (citations omitted). Also, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *U.S. v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). As for the timing of *Brady* disclosure, "[i]t is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated. Indeed, *Brady* requires disclosure of information that the prosecution acquires during the trial itself, or even afterward . . . . At the same time, however, the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (citations omitted).

  Here, the Government has acknowledged its affirmative obligations for disclosure under *Brady*, the Jencks Act, and *Giglio*, and has committed to making disclosures within the time that Judge Skretny will set in the eventual trial order. The Government's commitment will suffice at this time, as long as it ensures that Overton's opportunity to use any *Brady* information is proportional to the volume and the favorable nature of the information. The Government's obligations include Overton's line of reasoning at oral argument that information showing non-exclusive control of social-media accounts and credit-card payments potentially would favor his defense. *Cf. United States v. Rittweger*, 524 F.3d 171, 181 (2d Cir. 2008) (information about exclusive or non-exclusive control of a financial account fell under *Brady*).

The Court thus denies Overton's motion but without prejudice to renew before Judge Skretny as needed.

### E. Co-Conspirators

Partly as an extension of his *Brady* requests and partly as an extension of his discovery requests, Overton seeks information about co-conspirators "including but not limited to, interviews, testimony, phone records, facebook messages, emails, text messages, online social media records (including facebook, plenty of fish, and others), related to criminal records, arrests, promotion of prostitution, and other criminal schemes that may be in the possession of, or attainable by the prosecution, regarding individuals known as Carol Kraft a/k/a Carrie Bradshaw, Monique Miller a/k/a Khloe the Kardashian, and any other person associated with the actions alleged in the above referenced indictment." (Dkt. No. 63 at 4; *see also* Dkt. No. 65 at 1.) Overton's requests, though understandable, are too much at this time. To the extent that Overton here is seeking *Brady* material, the Government already has acknowledged its obligations, and Judge Skretny eventually will set a timeframe, as discussed above. To the extent that Overton is seeking statements of potential witnesses, his requests fall under the Jencks Act and will be addressed closer to trial. *See United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) ("We have previously held that Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements.") (citations omitted). To the extent that Overton is seeking other general discovery about co-conspirators as possible witnesses, his requests do not fall under FRCP 16 and are not discoverable this early as explained below. Overton also has not made clear how much of this information he already has, given the Government's voluntary discovery and given that he

7

seems to be able to identify a number of people whom he believes to be co-conspirators.  *Cf. United States v. Morales*, 916 F. Supp. 336, 339 (S.D.N.Y. 1996) (finding no *Brady* violation in a prostitution and sex trafficking case where the defendant already had "essential facts permitting him to take advantage of that evidence") (internal quotation and editorial marks and citation omitted).

Accordingly, the Court finds that the Government has fulfilled its obligations so far with respect to any requested information about co-conspirators.  The Court denies Overton's motion but without prejudice to renew closer to trial before Judge Skretny.

### F.  *Government Witnesses*

Finally, Overton seeks identities, statements, and other information concerning potential Government witnesses in a request that appears to be separate from his request about co-conspirators.  "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.  There is no general constitutional right to discovery in a criminal case, and Brady did not create one . . . ."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (citation omitted).  Courts are allowed to recognize circumstances in which a fair defense will be significantly hampered without some disclosures about Government witnesses.  *See, e.g., United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975).  Here, though, Overton has demonstrated in his motion papers that he has at least some familiarity with the events that the Government has alleged and the people who likely will have knowledge of those events.  *Cf. United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir. 1990) ("This, however, is not a case in which the Government was withholding the identities of or

access to witnesses whose presence at trial would surprise the defendant.  Here, Bejasa knew who the witnesses would be, had dealt with them before, and, presumably, either already knew their addresses and phone numbers from his representation of them or could otherwise have contacted them had he attempted with due diligence to do so.").  The Court accordingly denies this portion of Overton's motions but without prejudice to renew before Judge Skretny if necessary.

## III. CONCLUSION

The Court denies Overton's motions (Dkt. Nos. 63, 65) but without prejudice to renew if necessary after Judge Skretny issues a trial order.

This case now is ready for trial.

SO ORDERED.

                                                                       __/s Hugh B. Scott_____
                                                                       HONORABLE HUGH B. SCOTT
                                                                       UNITED STATES MAGISTRATE JUDGE

DATED: February 16, 2017