UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                                              **DECISION AND ORDER**
                                                                                     15-CR-9S

MARCELLUS OVERTON,

        Defendant.

## I.    INTRODUCTION

Presently before this Court is Defendant Marcellus Overton's motion to withdraw the guilty plea he entered on November 26, 2018. (Docket No. 286, 290.) The government opposes the motion. (Docket No. 288.) For the following reasons, Overton's motion is denied, and the parties are directed to abide by the sentencing schedule and appear for sentencing, as set out below.

## II.    BACKGROUND

### A. Plea Proceedings

On January 13, 2015, a federal grand jury returned a 2-count indictment against Overton charging him with sex trafficking, in violation of 18 U.S.C. §§ 1591 (a)(1) and (b)(2), and interstate transportation of a minor for purposes of prostitution, in violation of 18 U.S.C. § 2423 (a). (Docket No. 1.) The grand jury later returned a superseding indictment to add new allegations to the original charges. (Docket No. 104.)

On November 26, 2018, the eve of trial, Overton waived indictment and pleaded guilty to a superseding information charging him with conspiracy to commit sex trafficking

1

of a minor, in violation of 18 U.S.C. § 1594 (c).  (Docket Nos. 207-210.)  In his plea agreement and at his plea colloquy, Overton admitted that he trafficked a 17-year-old minor (referred to as Victim 1) for purposes of prostitution between December 2012 and March 2013.  (Docket Nos. 209, 244.)

In particular, Overton admitted that he transported Victim 1 from Olean, N.Y., to Niagara Falls, N.Y., and conspired to solicit prostitution appointments for Victim 1 through online advertisements posted on Backpage.com.  (Plea Agreement, Docket No. 209, ¶ 8; Plea Transcript, Docket No. 244, p. 18.)  Overton further admitted that he transported or arranged for the transportation of Victim 1 to her prostitution appointments and rented or arranged for the rental of the hotel rooms at which Victim 1's prostitution appointments took place.  (Id.)  Overton further admitted that he received a share of Victim 1's earnings from her prostitution activities.  (Id.)

Through his plea agreement and plea colloquy, Overton also confirmed his understanding of his sentencing exposure.  Overton acknowledged that he faces a maximum statutory sentence of life imprisonment, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of five years to life.  (Plea Agreement, ¶ 1; Plea Transcript, pp. 14-16.)  He further acknowledged that his sentencing exposure under the sentencing guidelines is likely 135-168 months' imprisonment, a fine of $17,500 to $175,000, and a term of supervised release of five years to life.  (Plea Agreement, ¶¶ 9-16; Plea Transcript, pp. 19-22.)  Notwithstanding this exposure, Overton and the government agree pursuant to Rule 11 (c)(1)(C) that a sentence of no fewer than 90 months' and no more than 213 months' imprisonment is an

2

appropriate sentence in this case.  (Plea Agreement, ¶ 17.)  Overton indicated that he understood this portion of the agreement.  (Plea Transcript, pp. 11, 21-23.)

During the plea allocution, Overton confirmed that he had no difficulty understanding this Court or his lawyer; that he understood the terms and conditions of the government's Rule 11 (c)(1)(C) plea offer; that he was satisfied with his lawyer; and that he was not incapacitated in any way due to medication, alcohol, or other controlled substances.  (Plea Transcript, pp. 5, 7, 8-9, 10.)  He also confirmed that he was entering his plea voluntarily, without fear of violence, intimidation, or threats of any kind. (Id. pp. 9, 26, 28.)

**B. Post-plea Proceedings**

At the conclusion of the plea proceeding, this Court scheduled sentencing for March 20, 2019.  (Docket No. 210.)  Overton, however, was convinced that the government failed to produce all exculpatory materials in discovery, and he questioned his attorney's effectiveness in failing to obtain those materials before he entered his guilty plea.  (Affirmation of Mark A. Foti, Esq. ("Foti Aff."), Docket No. 261-1, ¶ 12.[1]) Consequently, this Court appointed independent counsel to advise Overton as to any attorney-conflict issues stemming from his ineffectiveness concerns and as to whether it was in his best interests to pursue a motion to withdraw his plea under Rule 11 (d) of the Federal Rules of Criminal Procedure or proceed to sentencing.  (Docket Nos. 222, 223, 224.)

---

1 Overton's present counsel has incorporated this submission into his motion.  (See Affirmation of Frank LoTempio, III, Docket No. 286-1, ¶ 3.)

3

Thereafter, in an attempt to allay Overton's disclosure concerns, and to facilitate resolution of any possible attorney-conflict issues, the government voluntarily agreed to produce materials pursuant to a protective order.  (Foti Aff., ¶ 15; Docket No. 241.)  The government subsequently made multiple disclosures in response to Overton's multiple requests, including producing previously undisclosed material relating to Special Agent Karen Wisniewski, a witness whom the government did not intend to call at trial, but for whom Overton had requested pretrial discovery.  (Foti Aff., ¶¶ 3-5, 17-22; Docket No. 203.)  This production consisted of more than 40 pages of previously undisclosed reports and handwritten notes dating from January 31, 2014, to August 31, 2017.  (Id. ¶¶ 23-25.)

This voluntary disclosure prompted Overton to believe that other undisclosed materials may exist and to therefore make further requests for production.  (Id. ¶ 33.)  In response, the government produced additional responsive materials (some with redactions), but denied having knowledge or responsive information to some of the requests.  (Id. ¶¶ 33-36.)

**C. Agent Wisniewski's Materials**

As indicated, the government voluntarily produced material from Agent Wisniewski, which included handwritten notes from her interview of an individual referred to as Witness 3.  According to the government, Witness 3 is a female who had a years-long relationship with Overton that included both a romantic relationship and a pimp-prostitute arrangement.  (Memorandum of Law, Docket No. 288, p. 6.)  She has an extensive criminal background and a history of drug abuse.  Id.  Overton and Witness

4

3 also have a history of domestic disputes and competing orders for protection against one another.   Id.

Agent Wisniewski initially interviewed Witness 3, at which time Witness 3 denied that Overton was her pimp.   Id.   According to the government, Witness 3 claimed that she stole Overton's credit card, prostituted herself, and worked for another pimp.   Id. at p. 7.   Agent Wisniewski's notes from that interview contain entries relating to Overton such as "not a pimp," "never worked for Overton," "[another individual] posted advertisement," "girls never gave $ to," "never organized jobs," "all work done on own," "own phones," "own jobs," "she would go there to work," "didn't go w/Overton," and "photos – all personal."   (Foti Aff., ¶ 27.)

After this interview, Witness 3 changed her story and told law enforcement that Overton was in fact her pimp.   (Memorandum of Law, Docket No. 288, p. 7.)   According to the government, Witness 3 testified in the grand jury that she began working for Overton as a prostitute in 2011, that Overton photographed her with his cell phone and used the pictures to advertise her as a prostitute on Backpage.com, that Overton made her pay for the hotel rooms where she worked as a prostitute, and that Overton took Victim 1 and another prostitute to Atlanta in March 2013.   Id. (citing Exhibit 3503A, p. 5).

**D.  Discovery-related Motion Practice**

Still unsatisfied with the government's responses after receiving Agent Wisniewski's materials, and firmly believing that the government committed Brady violations, Overton moved for an order requiring the government to produce additional

5

Brady material and for a hearing[2] to explore the extent of the government's alleged Brady violations. (Docket Nos. 261, 269.) The government denied committing any Brady violations, opposed any hearing, and requested that the matter be set down for sentencing. (Docket Nos. 264, 271.)

On June 15, 2020, this Court denied the majority of Overton's motion on the basis that the government's post-plea disclosures had been voluntary and were therefore not generally subject to compulsion. (Docket No. 274.) It subsequently scheduled sentencing for August 11, 2020. (Docket Nos. 275, 276.) Thereafter, Overton's counsel moved to withdraw, and present counsel was assigned. (Docket Nos. 279, 282, 283.) This Court rescheduled sentencing for September 20, 2020. (Docket No. 285.)

On August 27, 2020, Overton moved to withdraw his plea under Rule 11 (d)(2)(B) of the Federal Rules of Criminal Procedure.[3] (Docket Nos. 286, 290.) He does not request a hearing. The government filed its opposition on September 11, 2020. (Docket No. 288.) This Court thereafter adjourned sentencing to December 16, 2020, where it remains scheduled. (Docket No. 293.)

### III.   DISCUSSION

The non-disclosure of Agent Wisniewski's materials forms the basis of the present motion. (Affirmation of Frank LoTempio, III ("LoTempio Aff."), Docket No. 286-1, ¶¶ 19-

---

2 Overton argued that a hearing was warranted under United States v. Avellino, 136 F.3d 249 (2d Cir. 1998).

3 In his notice of motion and throughout his papers, Overton purports to bring his motion under Rule 32 (e) of the Federal Rules of Criminal Procedure. Because the plea-withdrawal provisions of the federal rules were moved from Rule 32 to Rule 11 in 2002, this Court assumes that Overton intends to bring his motion under the current Rule 11 provisions. See Fed. R. Crim. P. 32, Advisory Comm. Notes (2002 Amendments).

26.)  Overton maintains that Agent Wisniewski's notes contain exculpatory information that the government was obligated to produce under Brady v. Maryland before he entered his plea.   373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).   He further maintains that the government tricked him into pleading guilty by failing to produce these notes, despite his repeated requests for them.   (LoTempio Aff., ¶¶ 20, 26, 52, 55; Declaration of Marcellus Overton ("Overton Decl."), Docket No. 261-3, ¶¶ 4, 6, 13.)   Accordingly, Overton maintains that the government's Brady violation is sufficient grounds to allow him to withdraw his guilty plea and proceed to trial.

The government admits that it did not discover or produce Agent Wisniewski's notes until after Overton pleaded guilty.   (Memorandum of Law, Docket No. 288, p. 8.) It contends, however, that its failure to discover the notes was inadvertent and that the notes constitute impeachment material, not Brady evidence, and therefore Overton was not entitled to disclosure of the notes before he entered his guilty plea.   The government therefore urges that there is no basis to permit Overton to withdraw his plea.

Before proceeding with the analysis, this Court pauses to address Overton's accusations that the government engaged in prosecutorial misconduct by knowingly withholding Agent Wisniewski's notes or remaining willfully blind to their existence.   (See LoTempio Aff., ¶¶ 34, 39, 40.)   After Overton entered his guilty plea, the government indulged his requests for additional discovery despite having no obligation to do so.   In the course of that endeavor, the government discovered the existence of Agent Wisniewski's notes in her case file, which it previously had no knowledge of, and immediately provided them to Overton's counsel.   Government counsel denies any

7

previous knowledge of Agent Wisniewski's notes, and there is no basis to disbelieve their assertions that the notes were not in their case file and that they never intended to conceal any items. (Memorandum of Law, Docket No. 288, p. 8.) Government counsels' surprise at discovering the notes appears genuine, and their conduct after finding them is consistent with both their obligations and their denial of any intention to withhold evidence. Id. Notably, Overton's conflict counsel, who brokered much of the post-plea voluntary discovery, shares this same assessment. (See Declaration of James W. Grable, Jr., Docket No. 286-5, ¶ 10 ("Based on my discussions with the government, . . . I believe that government counsel was sincerely surprised to learn of the exculpatory evidence in the case agent's file.").) Consequently, this Court finds no indication of any prosecutorial misconduct.

### A. Legal Standard

A defendant may withdraw a guilty plea any time before sentencing if he or she "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11 (d)(2)(B). A proven Brady violation meets this standard. See United States v. Avellino, 136 F.3d 249, 261 (2d Cir. 1998) (holding that a district court lacks discretion to deny a motion to withdraw a guilty plea where a Brady violation is established). The burden is on the defendant to demonstrate valid grounds for withdrawal under the rule. See United States v. Doe, 537 F.3d 204, 210-11 (2d Cir. 2008).

To succeed on a motion to withdraw based on a Brady violation, the defendant must demonstrate "(1) that the government failed to disclose favorable evidence, and (2) that the evidence it 'suppressed' was material." United States v. Payne, 63 F.3d 1200,

8

1208 (2d Cir. 1995).  In this context, "evidence is considered material where there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial."  United States v. Persico, 164 F.3d 796, 804-05 (2d Cir. 1999) (internal quotation marks omitted). This determination "involves an objective inquiry that asks not what a particular defendant would do but rather what is 'the likely persuasiveness of the withheld information.'"  See Avellino, 136 F.3d at 256 (citing Tate v. Wood, 963 F.2d 20, 24 (2d Cir. 1992)).

The Second Circuit has also identified general factors that a district court may consider in determining whether a defendant has shown a "fair and just reason" for the withdrawal of his or her plea: "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced[4] by a withdrawal of the plea."  United States v. Schmidt, 373 F.3d 100, 102–03 (2d Cir. 2004) (internal citations and quotation marks omitted).  These factors are stringently applied since "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice."  United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997) (citations, quotation marks, and alterations omitted).

---

4 Consideration of prejudice to the government arises only if the defendant first meets the high burden of demonstrating valid grounds for withdrawal of the guilty plea.  See United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992).

9

**B. Overton has failed to establish a Brady violation.**

In Brady, the United States Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[5]  373 U.S. at 87.  "[F]avorable evidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).  Brady matter encompasses "not only evidence that is exculpatory, i.e., going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, i.e., having the potential to alter the jury's assessment of the credibility of a significant prosecution witness."  Avellino, 136 F.3d at 255.

In Avellino, the Second Circuit determined that "[t]he government's obligation to make [Brady] disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty."  136 F.3d at 255.  This is because "[t]he defendant is entitled to make that decision with full awareness of favorable material evidence known to the government."  Id. (citing Tate, 963 F.2d at 24); see also Persico, 164 F.3d at 804.  But the United States Supreme Court later held in United States v. Ruiz that a defendant is not constitutionally entitled to "preguilty plea disclosure of impeachment information" because such information does not concern the

---

5 In subsequent cases, the Court eliminated the requirement that a defendant must request Brady materials.  See United States v. Agurs, 427 U.S. 97, 108, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976); United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

10

voluntariness of a plea.   536 U.S. 622, 629, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002).

Given the holding in Ruiz, several courts and commentators have questioned whether Avellino survives.   That is, whether the government is obligated to provide Brady material before a guilty plea.   See, e.g., Friedman v. Rehal, 618 F.3d 142, 153-54 (2d Cir. 2010) (discussing the effect of Ruiz on Avellino); Davis v. United States, No. 3:12-CV-1628 (JCH), 2015 WL 1277011, at *5 (D. Conn. 2015) (noting that "[t]he Second Circuit has not addressed whether its pre-Ruiz statements that plea-context Brady rights extend beyond impeachment evidence to exculpatory evidence . . . survive Ruiz").   But until such time as Avellino is abrogated, this Court must apply its holding that the government is obligated to disclose exculpatory evidence at the plea stage under Brady.   See Davis, 2015 WL 1277011, at *5.

Turning now to the parties' arguments, the government maintains that Overton was not entitled to Agent Wisniewski's notes before he entered his plea under Ruiz because the notes constitute impeachment evidence only.   Overton, on the other hand, maintains that the notes contain exculpatory Brady information that he was entitled to review under Avellino before deciding whether to plead guilty.   Because this Court finds that the notes are not material under the applicable Brady analysis, it need not definitively resolve whether they constitute impeachment or exculpatory evidence or a mixture of the two.   In any case, Overton was not entitled to disclosure because the notes are not material.[6]

"In the context of an attack on the validity of a plea, evidence is considered material

---

6 As to the first prong of the analysis, it is undisputed that the government failed to disclose Agent Wisniewski's notes before Overton entered his guilty plea.   See Payne, 63 F.3d at 1208.

11

where 'there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial.'"  Avellino, 136 F.3d at 256 (citing Tate, 963 F.2d at 24).  Overton fails to satisfy this standard for several reasons.

To begin, Overton mischaracterizes the importance of the notes by attributing the information contained in them to the government's "main witness" or "main witness/victim."  (See LoTempio Aff., ¶¶ 24, 28, 36.)  Counsel also avers that the notes "clear Mr. Overton of any wrongdoing."  Id. ¶ 24.  Yet nothing suggests that Witness 3 holds the prominence that Overton attributes to her, and it is surely an overstatement to characterize the notes as clearing Overton of any wrongdoing.  In fact, the government deems Witness 3 not essential to its case and represents that she was not involved with Overton during most of the charged timeframe, including when Overton transported Victim 1 to a prostitution appointment at the Comfort Suites in January 2013. (Memorandum of Law, Docket No. 288, pp. 1, 17, 18.)  Further, the government's updated witness list reveals that Witness 3 was but one of five witnesses expected to testify at trial "regarding her relationship with the defendant and about how he was engaged in the sex trafficking trade with charged and uncharged victims, and how he enticed and recruited them, harbored them, advertised them, transported them, directed their activities, and profited from the money they earned."  (Government Trial Witness List, Docket No. 190.)  Witness 3 is therefore not the sole or main witness against Overton.

Second, and relatedly, the totality of the information in Agent's Wisniewski's notes

relates to Overton's interactions with Witness 3, not his prostitution of Victim 1. Thus, notes reflecting Witness 3's statements that Overton was "not a pimp," that she "never worked for Overton," that an individual other than Overton "posted advertisement," and that Overton "never organized jobs" or was paid, while perhaps relevant, are not directly exculpatory as it relates to Overton's prostitution of Victim 1. (Foti Aff., ¶ 27.) So too with Witness 3's description of her working conditions—"all work done on own," "own phones," "own jobs," "she would go there to work," "didn't go w/Overton," and "photos – all personal"—none of which tend to necessarily exonerate Overton as it relates to Victim 1. Id.

And importantly, Witness 3's statements are not directly exculpatory because Witness 3 did not meet Victim 1 until March 2013, just before Overton took the two of them to Georgia for purposes of prostitution, as charged in Count 2 of the superseding indictment. (Memorandum of Law, Docket No. 288, p. 18 (citing Exhibit 3503A, p. 10).) This falls at the tail end of the period charged in Count 1 of the superseding indictment, which alleges that Overton sex-trafficked Victim 1 from December 2012 continuing through March 2013. Witness 3 thus has no direct knowledge of Overton's prostitution of Victim 1 before March 2013. Agent Wisniewski's notes therefore do not constitute the kind of powerful, directly exculpatory evidence that Overton suggests.

Third, the strength of the anticipated trial evidence belies any notion that Overton would have proceeded to trial if he had known of Agent Wisniewski's notes. By way of example, the government would have presented evidence that law enforcement observed Overton transport Victim 1 to the Comfort Suites on January 18, 2013, for a prostitution

13

appointment, one that was arranged via a Backpage.com advertisement purchased in Overton's name with his credit card using his contact information. (Memorandum of Law, Docket No. 288, pp. 15-16, 19 (citing multiple trial exhibits).)

The government would further have introduced evidence that Overton pleaded guilty to prostituting Victim 1 *on this very occasion* in state court on May 15, 2014. Id. (citing Exhibits 3 and 4). This evidence alone is so compelling that Overton twice moved to exclude it, with this Court twice finding it admissible. (Docket Nos. 157[7], 203.) Tellingly, as a testament to the highly probative and damning nature of this evidence, Overton moved to exclude it in part because he feared that its admission into evidence "would be tantamount to a virtually automatic conviction on Count 1." (Memorandum of Law, Docket No. 124, p. 2.) In this Court's view, pretrial access to Agent Wisniewski's notes would not have changed that calculation.

In addition, Overton faced other direct evidence of strong probative value. According to the government, Victim 1 testified in the grand jury that Overton showed her how to be a prostitute, provided her housing, photographed her in his residence, gave her a phone, and transported her to prostitution appointments. (Memorandum of Law, Docket No. 288, p. 21 (citing Exhibits 3502B, pp. 11-13, 16, 23 and 3502, p. 2).) A second witness testified that Overton photographed her and Victim 1, transported them to a hotel where he rented them a room to engage in prostitution, instructed them on how much to charge, taught them how to detect law enforcement, and provided them phones.

---

7 Reported at United States v. Overton, 15-CR-9S, 2017 WL 6347084 (W.D.N.Y. Dec. 13, 2017).

14

Id. (citing Exhibits 3504A, pp. 20-3 and 3504B, pp. 12-19). The government also represents that it would have presented multiple witnesses, including hotel employees, who observed Overton at hotels prostituting Victim 1. (Memorandum of Law, Docket No. 288, pp. 2, 15-16, 22.) Again, the strength of this evidence belies the notion that access to Agent Wisniewski's notes would have caused Overton to forgo a guilty plea and insist on going to trial.

Fourth, even in the face of this evidence, Overton's counsel negotiated a highly favorable plea. Facing life imprisonment under the statute and 135-168 months' imprisonment under the sentencing guidelines, Overton's lawyer was able to negotiate a Rule 11 (c)(1)(C) plea to a range of 90-213 months' imprisonment, a reduction of almost four years at the lowest end. (Plea Agreement, ¶ 17.) With such significant sentencing exposure in play, it is not objectively reasonable to believe that knowledge of Agent Wisniewski's notes would have caused Overton to reject the government's offer and instead exercise his trial right.

Finally, Overton offers no persuasive explanation for why he would have elected to proceed to trial rather than plead guilty if he had known about Agent Wisniewski's notes. In conclusory fashion, Overton simply maintains that he would have proceeded to trial "if the government had been truthful about the proof of [his] innocence." (Overton Decl., Docket No. 261-3, ¶ 13.) But, as explained above, Agent Wisniewski's notes are not direct proof of Overton's innocence, nor do they "prove[ ] the young woman at issue acted on her own – and not with or because of me," as Overton believes. Id. ¶ 4. In fact, the basis of Overton's claim that he would have proceeded to trial appears more to

15

do with his belief that the government withheld an exculpatory statement from Victim 1 than with Agent Wisniewski's notes. Id. ¶¶ 6-11. But this alleged statement from Victim 1 does not exist. Compare Decision and Order, Docket No. 274 (directing government to inquire about alleged statement) with Docket No. 275 (government reporting that no such statement exists). Thus, in the face of the strong evidence against him, Overton's after-the-fact claim that he would have proceeded to trial if the government had turned over Agent Wisniewski's notes is not compelling.

Consequently, for all of these reasons, this Court finds that Overton has failed to establish a Brady violation requiring that he be permitted to withdraw his guilty plea. He thus necessarily fails to establish a fair and just reason for withdrawal under Rule 11 (d)(2)(B).

### C. Consideration of the general factors counsel against permitting Overton to withdraw his guilty plea.

Consideration of the general factors used to determine whether Overton should be permitted to withdraw his guilty plea—whether Overton has asserted his legal innocence; the amount of time between the plea and the motion; and whether the government would be prejudiced by withdrawal of the plea—all counsel against permitting Overton to withdraw his guilty plea. See Schmidt, 373 F.3d at 102–03.

First, while Overton has largely maintained his legal innocence in these proceedings, his denial of the charges is severely undermined by not only his voluntary guilty plea on November 26, 2018, but also his guilty plea in state court to prostituting Victim 1 during the timeframe charged in the information. Overton has thus twice

16

admitted to prostituting Victim 1, which overrides his bald claims of legal innocence. Moreover, a defendant's claim of innocence "must be supported by evidence," which Overton's claim is not. United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001); see also United States v. Gonzalez, No. 06 Cr. 726 (WHP), 2010 WL 1640186, at *5 (S.D.N.Y. Apr. 8, 2010) ("A reference to corroborating facts—as opposed to a 'bald statement' of innocence—is essential if a court is to credit a defendant's present claims of innocence—sworn under oath—over his prior (and now contradicted) admissions of guilt *under oath*.") (emphasis in original)). Further, this Court "in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant," which does not help Overton's cause. United States v. Maher, 108 F. 3d 1513, 1530 (2d Cir. 1997) (citation omitted). Consequently, this factor weighs against permitting Overton to withdraw his guilty plea.

Second, while this Court finds it unfair to include the duration of the voluntary discovery proceedings against Overton as he weighed whether to formally seek to withdraw his plea, the fact remains that Overton waited nearly five months before first raising any concerns about his plea. Overton pleaded guilty on November 26, 2018, yet failed to raise any issues with his plea until, at the earliest, his motion to convert his sentencing date to a status conference, filed on April 15, 2019.[8] (Docket Nos. 210, 219.) A five-month delay weighs against permitting withdrawal of the plea. See United States v. Wilson, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011) (finding two-month delay between

---

8 Overton previously moved to adjourn his sentencing date on March 8, 2019. (Docket No. 217.) There was no indication of any issues with Overton's plea in that motion, which was based on defense counsel's schedule and workload only. Id.

17

defendant's guilty plea and challenge to the plea weighs against permitting withdrawal); United States v. Fernandez, 734 F. Supp. 599, 603 (S.D.N.Y. 1990) (finding four-month delay weighs against withdrawal); United States v. Grant, No. S7 10 Cr. 431 (CM), 2014 WL 4828469, at *15 (S.D.N.Y. Sept. 25, 2014) (finding eight-month delay weighs against withdrawal).

Finally, although prejudice to the government is not at issue because Overton has failed to demonstrate valid grounds for withdrawal of his plea, see United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992), this Court finds that the government would be prejudiced by withdrawal of the plea given the passage of time.  It has already twice prepared for trial, and the considerable resources it would take for the government to again achieve a state of trial-readiness, not to mention the difficulties it may encounter in marshalling its witnesses and evidence nearly two years after Overton's plea, weigh against permitting withdrawal of the plea.

Consequently, for these reasons, this Court finds that the general considerations weigh in favor of denying Overton's motion to withdraw his guilty plea.

**D. Overton's guilty plea is accepted, and the parties are directed to appear for sentencing.**

Having fully reviewed the presentence investigation report (Docket No. 281), this Court now accepts the parties' Rule 11 (c)(1)(C) sentencing agreement pursuant to Rule 11 (c)(4) and finds that a sentence within the agreed upon disposition of 90-213 months' imprisonment will constitute a fair, just, and reasonable sentence in this case.  The parties must appear in person for sentencing before this Court on December 16, 2020, at

2:00 p.m., as scheduled, and abide by the sentencing-submission schedule set forth below.

## IV.  CONCLUSION

For the reasons stated above, this Court finds that Overton has failed to demonstrate a fair and just reason to permit withdrawal of his November 26, 2018 guilty plea. The parties must therefore appear for sentencing as scheduled and adhere to the sentencing-submission deadlines set forth below.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Withdraw his Guilty Plea (Docket No. 286) is DENIED.

FURTHER, that the parties shall appear before this Court in person for sentencing on December 16, 2020, at 2:00 p.m.

FURTHER, that sentencing factor statements, objections to the Presentence Investigation Report (Docket No. 281), and any sentencing motions are due by December 4, 2020.

FURTHER, that any responses to the above submissions and any character letters are due by December 11, 2020.

SO ORDERED.

Dated:    November 25, 2020
          Buffalo, New York

                                                    s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge