UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCELLUS OVERTON,

                Petitioner,

   v.

                            **DECISION AND ORDER**
                                22-CV-555S
UNITED STATES OF AMERICA,               15-CR-9S

                Respondent.

## I. INTRODUCTION

Presently before this Court is pro se[1] Petitioner Marcellus Overton's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  (Docket No. 363.)  Also pending is the government's motion to dismiss the petition and Overton's motions to strike and for judgment on the pleadings.  (Docket Nos. 365, 368, 374.)  For the reasons discussed below, Overton's motions are denied, the government's motion is granted, and the petition is denied.

## II. BACKGROUND

On January 13, 2015, a federal grand jury returned a 2-count indictment against Overton charging him with sex trafficking, in violation of 18 U.S.C. §§ 1591 (a)(1) and (b)(2), and interstate transportation of a minor for purposes of prostitution, in violation of 18 U.S.C. § 2423 (a).  (Docket No. 1.)  The grand jury later returned a superseding

---

[1] Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Since Overton is proceeding pro se, this Court has considered his petition and other submissions accordingly.

indictment to add new allegations to the original charges.  (Docket No. 104.)

On November 26, 2018, the eve of trial, Overton waived indictment and pleaded guilty to a superseding information that charged him with conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594 (c).  (Docket Nos. 207-210.)  During the plea allocution, Overton expressly agreed to proceed by way of the superseding information.  (Plea Transcript, Docket No. 244, pp. 5-7.)  He indicated that he had thoroughly reviewed the document with his lawyer and understood it.  (Id., p. 5.)  He further stated that he understood and waived his right to indictment by a grand jury on the conspiracy charge, and that he signed the waiver of indictment form voluntarily after consulting with his attorney.  (Id., pp. 6-7.)

As to the substantive offense, Overton admitted that he trafficked a 17-year-old minor (Victim 1) for purposes of prostitution between December 2012 and March 2013. (Docket Nos. 209, 244.)  In particular, Overton admitted that he transported Victim 1 from Olean, N.Y., to Niagara Falls, N.Y., and conspired to solicit prostitution appointments for Victim 1 through online advertisements posted on Backpage.com.  (Plea Agreement, Docket No. 209, ¶ 8; Plea Transcript, p. 18.)  Overton also admitted that he transported or arranged for the transportation of Victim 1 to her prostitution appointments and rented or arranged for the rental of the hotel rooms at which Victim 1's prostitution appointments took place.  (Plea Agreement, ¶ 8.)  Overton further admitted that he received a share of Victim 1's earnings from her prostitution activities.  (Id.)

Overton also confirmed his understanding of his sentencing exposure.  Overton acknowledged that he faced a maximum statutory sentence of life imprisonment, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of

2

five years to life.   (Plea Agreement, ¶ 1; Plea Transcript, pp. 14-16.)   He further acknowledged that his sentencing exposure under the sentencing guidelines was likely 135-168 months' imprisonment, a fine of $17,500 to $175,000, and a term of supervised release of five years to life.   (Plea Agreement, ¶¶ 9-16; Plea Transcript, pp. 19-22.) Notwithstanding that exposure, Overton and the government agreed pursuant to Rule 11 (c)(1)(C) that a sentence of no fewer than 90 months' and no more than 213 months' imprisonment was an appropriate sentence.  (Plea Agreement, ¶ 17.)  Overton indicated that he understood this portion of the agreement.  (Plea Transcript, pp. 11, 21-23.)

Overton also attested that he understood the parties' appeal rights.  (Id., p. 26.) Overton waived his right to appeal or collaterally attack any component of a sentence imposing 213 months' or fewer of imprisonment, no matter how the court determined the sentence.  (Plea Agreement, ¶ 24.)  And he further waived his right to challenge his sentence on the basis of previously unknown facts or changes in the law. (Id., ¶ 25.) The government, in turn, waived its right to appeal any component of a sentence of 90 months' imprisonment or greater, notwithstanding the manner in which the court determined the sentence.  (Id. ¶ 26.)

During the plea allocution, Overton confirmed that he had no difficulty understanding this Court or his lawyer; that he understood the terms and conditions of the government's Rule 11 (c)(1)(C) plea offer; that he was satisfied with his lawyer; and that he was not incapacitated in any way due to medication, alcohol, or other controlled substances.  (Plea Transcript, pp. 5, 7, 8-9, 10.)  He also confirmed that he was proceeding by superseding information and plea voluntarily, without fear of violence, intimidation, or threats of any kind.  (Id. pp. 9, 26, 28.)

3

After protracted post-plea proceedings, Overton appeared for sentencing on January 5, 2021, at which time this Court sentenced him to 90 months' imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees, or costs. (Docket No. 320.)  The Clerk of Court entered judgment on January 6, 2021.  (Docket No. 321.)

Overton appealed his conviction and sentence through a Notice of Appeal filed on January 11, 2021.  (Docket No. 324.)  On February 3, 2022, the United States Court of Appeals for the Second Circuit denied Overton's appeal and affirmed the judgment.  See United States v. Overton, 24 F. 4th 870 (2d Cir. 2022).  The court entered its mandate on March 10, 2022.  (Docket No. 362.)

Overton filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on July 18, 2022.  (Docket No. 363.)  He raises three claims: (1) the judgment was obtained by fraud; (2) he was denied effective assistance of counsel; and (3) the judgment is void for lack of jurisdiction.  In response, the government moved to dismiss the petition on September 2, 2022.  (Docket No. 365.)  Thereafter, Overton filed an affidavit in further support of his petition and moved to strike the government's motion to dismiss as untimely.[2]  (Docket Nos. 367, 368.)  The government filed a reply in further support of its motion to dismiss on October 31, 2022, after which Overton filed a supplemental affidavit and exhibits.  (Docket Nos. 370, 372, 373.)  On March 27, 2023, Overton moved for

---

[2] Overton moved to strike the government's motion to dismiss as untimely, which indeed it was under the scheduling order.  (See Order, Docket No. 364.)  But Overton's petition was premature until the United States Supreme Court denied his petition for writ of certiorari on October 3, 2022.  Rather than dismiss the petition as premature and face the re-filing of both the petition and the motion to dismiss, this Court finds it in the interests of expediency and judicial economy to deem the motion to dismiss timely filed.  Overton's motion to strike will therefore be denied, with this Court finding no prejudice since Overton had a full and fair opportunity to oppose the government's motion.

judgment on the pleadings, which the government responded to in opposition on the same day.[3]  (Docket Nos. 374, 375, 378.)  This Court took each motion under advisement without oral argument.

### III. DISCUSSION

**A.    § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d

---

[3] Overton moved for judgment on the pleadings on the basis that the government does not object to his petition because it did not file an answer.  This ignores the government's motion to dismiss and request for time to answer, which squarely opposes Overton's petition.  In any event, because this Court finds that Overton is not entitled to the relief he seeks, it will also deny his motion for judgment on the pleadings. Given this outcome, the government's motion to file a sur-reply will be denied as moot.  (Docket No. 379.)

587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.").  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  But an exception exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition."  Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of non-

constitutional, non-jurisdictional claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual prejudice or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Brennan v. United States, 867 F.2d 111, 117 (2d Cir. 1989) ("non-constitutional and non-jurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal").   To satisfy the cause component, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993).  To satisfy the prejudice component, the petitioner must demonstrate prejudice that creates an "actual and substantial disadvantage, infecting . . . error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  To establish actual innocence, the petitioner must show "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley, 523 U.S. at 623 (internal quotation marks and citation omitted).  But this rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.  See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

In addition to these two rules, waiver principles apply.  It is well established that a knowing, voluntary, and competent waiver made as part of a plea agreement is presumptively and generally enforceable.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011);  United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001).   "An

7

enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)). Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement. See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Leave of court is required to engage in discovery, which may be granted for good cause. See Rule 6 (a). Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[4] Id. The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and

---

[4] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 6 (a).

records of prior proceedings, and any [additional materials submitted by the parties]."

Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving

party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8

(c).  A hearing is generally warranted only where the petitioner establishes a plausible

claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255

evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required
> to hold a hearing "[u]nless the motion and the files and records
> of the case conclusively show that the prisoner is entitled to
> no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States,
> 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit
> summary dismissals of motions that present facially valid
> claims).  However, the filing of a motion pursuant to § 2255
> does not automatically entitle the movant to a hearing; that
> section does not imply that there must be a hearing where the
> allegations are "vague, conclusory, or palpably incredible."
> Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct.
> 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States,
> 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the
> motion must set forth specific facts supported by competent
> evidence, raising detailed and controverted issues of fact that,
> if proved at a hearing, would entitle him to relief.  See, e.g.,
> Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v.
> Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Ultimately, the petitioner bears the burden of proving entitlement to relief under §

2255 by a preponderance of the evidence.  See Galviz Zapata v. United States, 431 F.3d

395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir.

1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.    Overton's petition is implausible and fails on the merits.**

Overton's petition is somewhat difficult to decipher.  His overarching contention is

that the government secured his conviction by orchestrated fraud.  This borders on the fanciful and finds no support in the record.  Consequently, because each claim is grounded in this faulty premise, Overton's petition must be denied in its entirety.

In his first ground for relief, Overton claims that "[t]he United States Attorneys' Office perpetrated fraud upon the court, [Overton], and [Overton's] attorney."  (Petition, Docket No. 363, p. 4.)  The objective of this alleged scheme to defraud was to prosecute Overton without standing and without jurisdiction.  (Id., p. 5.)  To accomplish this goal, government attorneys allegedly "cloaked their identit[ies]" and filed "unfound, unsworn, and fraudulent charges against [Overton] . . . in the name of a grand jury."  (Id., pp. 5, 6.)  Overton appears to contend that no grand jury ever existed—or that his initial charges were never presented to a grand jury—but instead, government attorneys falsified the indictment and superseding indictment by "label[ing] the fraudulent charging document 'indictment' and typ[ing] a 'true bill' on the signature page to pretend that it was the action of a grand jury, the people (real plaintiff with standing)."  (Id., pp. 5, 7.)  Overton also claims that the government falsely stated that the conspiracy charge to which he pleaded guilty was returned by the grand jury.  (Id.)  All of this, according to Overton, resulted in unconstitutional process that resulted in a void judgment.  (Id., p. 7.)

None of Overton's imaginative contentions have merit.  First, both the indictment and superseding indictment were properly returned by a federal grand jury properly empaneled in this district, and Overton neither alleges nor demonstrates any particular irregularities in the grand jury or indictment process.  (Docket Nos. 1, 104.)  There is simply no indication or evidence that the government circumvented the grand jury process or in any way falsified the grand jury's charging instruments.  Overton's allegations to the

contrary are entirely baseless.  Moreover, Overton's conviction and sentence are not premised on either of the indictments, rendering even far-fetched infirmities irrelevant to the petition.

Second, there is no merit to Overton's contention that the government falsely claimed that the conspiracy charge in the superseding information was returned by a grand jury.  Overton points to no instances where this alleged misrepresentation was made, and review of the superseding information itself reveals no hallmarks of a grand jury indictment.  (See Docket No. 208.)  And the important fact that the superseding information was *not* returned by a grand jury was discussed during the plea allocution in open court.  That is, this Court specifically explained Overton's right to indictment by a grand jury, and Overton expressly waived that right, electing instead to sign the waiver of indictment form and proceed on the superseding information.  See Fed. R. Crim. P. 7 (b) (providing that an offense punishable by more than one year of imprisonment may be prosecuted by information if the defendant waives prosecution by indictment in open court and after being advised of the nature of the charge and of his rights).  Overton confirmed that he had discussed proceeding by information with his lawyer, and his election to proceed in that manner was knowing, willful and voluntary.  At no time was this Court or any party under the illusion that a grand jury had indicted Overton on the conspiracy charge that forms the basis of his conviction and sentence.

Consequently, because there is no merit to any of Overton's contentions, it cannot be concluded that the criminal process was unconstitutional or that the judgment is void for any of the reasons alleged.  The first ground fails.

In his second ground for relief, Overton maintains that his lawyer[5] provided ineffective assistance of counsel by failing to object to the fraudulent criminal proceedings as unconstitutional and void for lack of subject-matter jurisdiction.  (Id., pp. 11-12.)  He further faults his lawyer for "improperly advis[ing] [him] to waive his rights to Due Process–Grand Jury Indictment–and answer or plea to unsworn, unfound, and fraudulent charges filed by the United States Attorneys (unauthorized party, without standing)."  (Id.)  Overton contends that he "would not have answered or plead to the charges" had he known or been advised of the various infirmities he identifies in the criminal process.  (Id., p. 12.)

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  To succeed on an ineffective-assistance-of-counsel claim, a petitioner must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Here, Overton fails to demonstrate that his lawyer's performance was objectively unreasonable because, as explained above, the factual premise of the claim—the scheme to defraud—lacks merit.  Counsel could not have objected as Overton maintains he should have because there were no fraudulent, unauthorized, or unconstitutional

---

[5] Overton does not identify which of his several attorneys allegedly provided ineffective assistance.

proceedings to object to.   Any objection in that regard would have been baseless.
Similarly, Overton cannot prove any prejudice from counsel's performance, again
because there were no constitutional or other infirmities in the criminal process, as
explained above.   The second ground therefore fails.

Finally, in his third ground for relief, Overton alleges that the judgment is void
because this Court failed to properly acquire subject-matter jurisdiction due to the fraud
alleged above.   (Id., p. 15.)   Because there is no merit to the fraud allegations, this third
ground fails.   Cf. 18 U.S.C. § 3231 (providing that "[t]he district courts of the United States
shall have original jurisdiction, exclusive of the courts of the States, of all offenses against
the laws of the United States.").

Accordingly, Overton's petition fails on the merits and must be denied.

**C.   Overton knowingly, voluntarily, and competently waived his right to appeal and collaterally attack his sentence.**

A defendant's knowing, voluntary, and competent waiver of his right to appeal and
collaterally attack his sentence is presumptively enforceable.   See Riggi, 649 F. 3d at
147.   To determine whether a challenged waiver is enforceable, courts examine the
underlying record and may rely on a defendant's sworn statements during the plea
allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which
statements "carr[y] such a strong presumption of accuracy that a district court does not,
absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-
serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir.
2001). The petitioner bears the burden of demonstrating that he did not knowingly and
voluntarily waive his appeal and collateral attack rights.   See United States v. Hargrove,
Nos. 03-CV-6634T, 02-CR-6064T, 01-CR-6112T, 2004 WL 2123497, at *2 (W.D.N.Y.

Aug. 10, 2004).

Aside from contentions based on his meritless fraud allegations, Overton does not challenge the knowing, voluntary, and competent nature of his guilty plea, including his waiver of his right to appeal or collaterally attack his sentence.  Indeed, both the plea agreement and plea allocution demonstrate the validity of Overton's waiver.

First, in his plea agreement, Overton acknowledged his rights to appeal and collaterally attack his sentence and then knowingly agreed to waive them as follows:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which is a term of imprisonment of no more than 213 months, or falls within or is less than the sentencing range for a fine and supervised release set forth in Section III, ¶ 16, above, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.
>
> The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

(Plea Agreement, ¶¶ 24, 25.)

Overton further acknowledged that he had read the plea agreement, that he had a full opportunity to discuss the terms of the plea agreement with his lawyer, that the agreement represented the total agreement between himself and the government, that no promises or representations other than those contained in the plea agreement were made to him, that he understood all of the consequences of his guilty plea, that he fully

14

agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will.  (Id. ¶ 27 and p. 11.)

Second, the plea allocution confirms that Overton validly waived his rights to appeal or collaterally attack his sentence.  Overton expressed the voluntary nature of his plea (see Plea Transcript, pp. 9, 26, 28), his satisfaction with his lawyer (see id. pp. 7), his understanding of the appeal-waiver provisions (see id. pp. 26), and his acknowledgement that no promises other than those in the written plea agreement were made to him (see id. p. 26).

Consequently, having thoroughly examined the record, and in the absence of any legitimate contention otherwise, this Court finds that Overton entered his guilty plea and its waiver provisions knowingly, voluntarily, and competently.

**D.    Overton's remaining claims are barred by waiver.**

Having found that Overton knowingly, voluntarily, and competently waived his appeal and collateral-attack rights, this Court must enforce the waiver.  Cf. United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.").  While there are narrow exceptions to the general enforceability of waivers, none of them apply here.  A waiver provision is presumptively enforceable other than

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus

> amounting to an abdication of judicial responsibility subject to
> mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d

Cir. 2000)).  Since none of these exceptions apply, this Court must enforce the waiver

provision of the plea agreement to independently bar Overton's claims.

A valid "waiver bars claims based on grounds that arose after, as well as before,

the [plea] agreement was signed."  Muniz, 360 F. Supp. 2d at 577.  A valid guilty plea

"conclusively resolves the question of factual guilt supporting the conviction, thereby

rendering any antecedent constitutional violation bearing on factual guilt a non-issue."

United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411

U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant

validly admits guilt, "he may not thereafter raise independent claims relating to the

deprivation of constitutional rights that occurred prior to the entry of the guilty plea").  And

the Second Circuit has "long enforced waivers of direct appeal rights in plea agreements,

even though the grounds for appeal arose after the plea agreement was entered into."

Garcia-Santos, 273 F.3d at 509 (citing United States v. Yemitan, 70 F.3d 746, 747-48 (2d

Cir. 1995)); see also United States v. Harrison, 699 F.3d 158, 159 (2d Cir. 2012) (per

curiam) (finding that the petitioner's "inability to foresee that subsequently decided cases

would create new appeal issues does not supply a basis for failing to enforce an appeal

waiver") (quoting Riggi, 649 F.3d at 150 n. 7 )); Medina v. United States, 16 Civ. 5043

(AT)(JCF), 94 Cr. 0872 (SAS)(JCF), 2017 WL 476670, at *2 (S.D.N.Y. Feb. 3, 2017)

(citing Garcia-Santos in rejecting a petitioner's argument that his waiver was not knowing

and voluntary "because he could not have known 'that he was also waiving a right that

didn't exist at the time of the guilty plea'").  The same is true for enforcement of waivers

of collateral attack under § 2255.  See Garcia-Santos, 273 F.3d at 509 ("The reasons for enforcing waivers of direct appeal [when the grounds for appeal arose after the plea agreement was entered into] lead us to the same conclusion as to waivers of collateral attack under § 2255.").

Overton's ineffective-assistance-of-counsel claim is not the type that falls outside of the waiver.  "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement.  Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002).  A waiver may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel.  See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004); see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)).  Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel" that informed his or her decision to enter the guilty plea.  Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added).

This is because, if a petitioner challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver.  Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice

about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim.").  In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not.  See id. at *5.

As discussed above, there is no merit to Overton's ineffectiveness claims, whether they pertained to the plea process or not.  But to the extent Overton's petition can be read to raise ineffectiveness claims that do not relate to the plea process, for example claims relating to detention or unconstitutional process (see Petition, pp. 11-12), such claims do not survive the valid, enforceable waiver.  See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing.  We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")); Mitchell v. United States, Case Nos. 14-CV-6350-FPG, 11-CR-6019-FPG, 2020 WL 587883, at *7 (W.D.N.Y. Feb. 6, 2020) (finding pre-plea ineffective-assistance-of-counsel claims barred by valid waiver where they pertained solely to pre-plea errors that did not involve the plea process); United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (finding that only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may "[c]laims of ineffective

assistance of counsel . . . survive § 2255 waivers").

Finally, Overton appears to claim that he is actually innocent of the charge against him.  (See, e.g., Affidavit of Marcellus Overton, Docket No. 367, ¶ 13 ("I am innocent."); Supplemental Affidavit of Marcellus Overton, Docket No. 372, ¶ 4 ("I am in custody for federal infamous crimes . . . that I did not commit . . . .").  But to establish actual innocence, Overton must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  Here, Overton produces no such evidence and makes no such showing.  See United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) (finding that a claim of actual innocence "must be supported by evidence").

Consequently, for the reasons stated above, this Court finds that each of Overton's claims independently fail by operation of the waiver provisions of his plea agreement.

**E.   Evidentiary Hearing**

As indicated above, § 2255 provides that a court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, this Court finds that no evidentiary hearing is warranted or required because Overton's motion and the record conclusively demonstrate that Overton is not entitled to relief under § 2255.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815,

at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

## F.   Certificate of Appealability

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Overton must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Overton has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

For the reasons stated above, Overton's Motion to Vacate, Set Aside or Correct his Sentence is denied.  If Overton wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 363) is DENIED.

FURTHER, that the government's Motion to Dismiss (Docket No. 365) is GRANTED.

FURTHER, that Petitioner's Motions to Strike and Motion for Judgment on the Pleadings (Docket Nos. 368, 374) are DENIED.

FURTHER, that the government's motion to file a sur-reply (Docket No. 379) is DENIED AS MOOT.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See< Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 22-CV-555S.

FURTHER, that the Clerk of Court is directed to mail a copy of this decision to Petitioner at his correctional institution of record.

SO ORDERED.


Dated:        June 1, 2023
              Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge

21